CITED *in State* v. *Flavell & Fredericks,* 4 *Zab.* 380; *State* v. *Ross,* 4 *Zab.* 503; *State* v. *Newark,* 1 *Dutch.* 316; *State* v. *Newark,* 2 *Dutch.* 523; *Wright* v. *Carter,* 3 *Dutch.* 86; *State Treas.* v. *Som. & Eas. R. R. Co.,* 4 *Dutch.* 27; *State* v. *City of Elizabeth,* 4 *Dutch.* 109-110; *State* v. *Leester,* 5 *Dutch.* 542; *State* v. *Hancock,* 4 *Vr.* 317; *Cook* v. *State,* 4 *Vr.* 479; *State* v̇. *Gaffney,* 5 *Vr.* 132; *State* v. *Haight,* 6 *Vr.* 44; *State* v. *Hancock,* 6 *Vr.* 545: *State* v. *Love,* 8 *Vr.* 62, *State* v. *Collector, &c.,* 9 *Vr.* 273; *Black* v. *Del. & Rar. Can. Co.,* 7 *C. E. Gr.* 410.

---

THE STATE (JAMES POTTER PROSECUTOR,) v. ROBERT R. ROSS, COLLECTOR OF PRINCETON.

1. No poll tax can be levied upon a person temporarily resident in the state. The statute directs it to be levied upon "inhabitants," which implies more than mere residence: it requires the domicil to be within the state.

2. A person having a fixed domicil in another state, coming into this state for part of the year with his family and servants to reside at a house owned by him here, does not thereby change his domicil, and become an inhabitant of this state.

3. The real estate and personal chattels of non-residents, under the act of 1851, are to be taxed in the township where they are found.

4. Upon the amount of assessment, or the mere value of the property assessed, the decision of the commissioners of appeal is final, and cannot be reviewed in this court: *aliter,* as to the question, whether the property, or any part of it, is liable to taxation.

5. The bonds of corporations in this state, or of residents thereof, or the stock of corporations in this state held by inhabitants of another state, are not liable to taxation in this state.

This was an assessment made by the assessor of the township of Princeton upon James Potter, the prosecutor, in the year 1851, for taxes, and removed into this court by *certiorari*.

James Potter owned and cultivated a rice plantation in Georgia, which he considered his place of residence or permanent domicil; he voted, performed jury duty, and exercised the other rights of a citizen in Georgia, and did not in New Jersey. He owned a house and establishment in Princeton, in which he resided with his family and servants for five or six months in each year during the sickly season in Georgia.

He was assessed in Princeton—first, for his lands and personal chattels situate there; secondly, for a poll tax of fifty cents; and, thirdly, for $200,000 of Camden and Amboy Railroad bonds owned by him.

The case was argued by *Field* and *Dayton*, for plaintiff in *certiorari*, and *J. S. Green*, for defendant.

*Field*, for plaintiff.

The first point is, whether Mr. Potter is an *inhabitant* of New Jersey. The second, if he is not, is he liable to a poll tax or a tax on these bonds.

I. He is clearly not a citizen of New Jersey; he considers his domicil, he votes and performs jury duty in Georgia—therefore clearly no citizen of New Jersey. 3 *Harr.* 138, *Cadwallader's case.*

II. If not an inhabitant, is he taxable for these bonds?

It is a settled rule that personal property follows the residence of the owner: this rule especially applies to all choses in action.

The second section of the act of 1851 defines what is taxable property; it declares that all personal estate *within* this state should be liable to taxation. Unless the rule of law, that personal property follows the residence of its owner, is changed by the express enactment of this act, these bonds are personal property without the state.

The fourth section says that the term "personal estate," as used in the act, shall include "debts due from solvent debtors and stock in corporations, whether within or without the

state." But this is clearly only a definition of what *is* personal property ; it does not define its location or make it taxable when it is not within the state, that is when its owner resides out of the state.

The assessor can only tax such property of non-residents as he finds actually within his township—no other.

*Green,* for Princeton.

The act of 1851, under which this tax is assessed, defines what is to be taxed. It includes these bonds clearly within its terms, " debts due from solvent debtors within or without the state," (§ 4, *p.* 272) ; they are not in any exemption in section 5. Section 2 enacts that all personal estate within the state shall be liable to taxation ; bonds and personal estate in action always follow the person, and Mr. Potter was residing within the state at that time, whether temporarily or not makes no difference as to this point. Section 5 merely gives directions to the assessors as to where the tax shall be assessed, and cannot control the express enactments of sections 2 and 4.

*Dayton,* for prosecutor.

We do not contend that these bonds are on a different footing from any other bonds, as to being liable to taxation.

I. As to poll tax, it can only be on an inhabitant ; an inhabitant has a permanent domicil. The whole act shows that this was what was regarded. Right of taxation and representation go together ; it does not depend on voting only. 8 *B. & C.* 62 ; 5 *Ves.* 750 ; 5 *Pick.* 377, *Harvard* v. *Gore.*

II. These bonds are merely personal securities which follow the residence of the person : their location, therefore, if Mr. Potter's residence is in Georgia, is there, and not here, and therefore, in the language of the act, they are not personal property *within* this state. 3 *Green* 322 ; *Story's Conf. of Laws,* § 20, 21.

The CHIEF JUSTICE. The evidence in this case shows that the prosecutor is an inhabitant of the state of Georgia. A planter living upon and superintending his own plantation, having his domicil there, and exercising within that state all

the rights and privileges of citizenship. He owns, also, a furnished dwelling in Princeton, which he occupies during the summer months, with his family and his usual establishment and retinue of equipage and servants. Being at his residence in Princeton, on his annual visit to the north at the time of the assessment, he was assessed—

1. With a poll tax.

2. For his real estate, and all his chattels or tangible personal property within the township at the time of making the assessment, and permanently used there.

3. For a large amount of the bonds of the Camden and Amboy Railroad and Delaware and Raritan Canal Companies, owned by the prosecutor.

Of the assessment upon the real estate and the chattels permanently used within the township of Princeton, there is no complaint. That assessment is clearly legal. The real estate of non-residents lying within this state, and such of their personal chattels as are permanently used or kept in this state, are liable to taxation in like manner as the property of citizens or inhabitants of this state. The only distinction is, that the chattels, as well as the real estate of a non-resident, are to be assessed in the township where they are found, and such assessment is liable to no deduction on account of the mortgage or other debts of the owner; whereas all the personal property of an inhabitant of the state is to be assessed in the township where he resides, and he is entitled, in that township, and not elsewhere, to a deduction of the whole amount of the debts due and owing by him, from the valuation of all his personal estate, and of his real within that township.

The assessment of a poll tax against the prosecutor is clearly illegal. The statute enacts that a poll tax of fifty cents shall be assessed upon every white male *inhabitant of this state* of the age of twenty-one years and upwards. The term "inhabitant," as used in the act and in the popular acceptation of the phrase, means something more than a person having a mere temporary residence. It imports citizenship and municipal relations; and if the term were less unequivocal than it is, it could never be presumed, in the absence of the most explicit

enactment, that the legislature designed to impose a poll tax upon the citizens of another state. The idea is repugnant to every principle of sound policy, of just legislation, and of international comity. " In imposing a tax," says Chief Justice Marshall, " the legislature acts upon its constituents." *McCulloch* v. *The State of Maryland,* 4 *Wheat.* 316.

A personal tax is the burthen imposed by government upon its own citizens for the benefits which that government affords by its protection and its laws; and any government which should attempt to impose such tax upon the citizens of other states would justly incur the rebuke of the enlightened sentiment of the civilized world. No such intention can be imputed to our legislature; they have in express terms excluded the idea, by confining the poll tax to *inhabitants of this state.*

A temporary residence, for the purpose of business or pleasure, continued for days, weeks, or even months, while the party's domicil is elsewhere, and while he has no intention of becoming a citizen of this state, does not, as has been already said, constitute an inhabitant. It is perfectly immaterial, for this purpose, whether he makes his temporary residence in his own dwelling, with his domestic establishment and retinue about him, or as a mere lodger in the house of another.

The second ground assigned for setting aside the assessment is, that it includes a large amount of the bonds of the Camden and Amboy Railroad and Delaware and Raritan Canal Companies owned by the prosecutor.

No objection is made here to the mere amount of the assessment; nor can there be, for upon that point the decision of the commissioners of appeal is final and conclusive. The only question presented by the exception is, whether the bonds, notes, stocks, or other property in action of persons not inhabitants of this state are liable to taxation by our law, the debtor or corporation in which the stock is owned being within this state. The fact that the individual whose property is assessed is living temporarily within the state, cannot vary or affect his rights.

It cannot be denied that the language of the act is broad enough to cover the property thus circumstanced. It is true,

as was contended on the argument, that the fourth section of the act does, in very terms, declare that the personal estate made liable to taxation by the act shall include debts due from solvent debtors, whether on contract, note, bond, or mortgage, public stocks and stocks in corporations, whether within or *without* the state. But it is apprehended that the whole office of this fourth section is to define the meaning and extent of the phrase "personal estate," used in the second section.

That it applies exclusively, as every other section of the act does, (except so far as they relate to real estate or chattels whose visible locality is within this state) to the inhabitants of this state. If any other construction be adopted, the inevitable consequence is, that citizens of other states would be made liable to taxation, not only on stocks they owned within this state, but also on stocks in corporations without the state; in other words, the citizens of Georgia would be liable to taxation in this state on stock owned by them in a corporation in Georgia. No such construction can rationally be adopted. Consequently the section must be limited in its operation exclusively to property owned by inhabitants of this state. There is no phraseology in the act, then, which, properly considered, does include the property in action of non-residents; and I am of opinion that the legislature did not design that the property in question should be liable to taxation. And this mainly on two grounds.

1. Because every law must be presumed primarily to apply, when not otherwise clearly expressed, to the citizens of that state or the subjects of that government by which the law is enacted, and not to the citizens of other states or the subjects of other governments.

2. By the law under consideration, the legislature have declared that all the property in action of every citizen of this state, wherever it may be situate, shall be liable to taxation. It has enacted that debts due from foreign debtors and stocks in corporations in other states, and all property in action owned by citizens of this state, shall be taxed to the owner thereof. They have legislated upon the principle, that property in action having no visible locality should follow the domicil

of the owner, and be subject to taxation there. Adopting this principle in regard to their own citizens, it is not probable that the legislature designed to repudiate it in regard to the citizens of other states. Such a course of legislation, besides its tendency to provoke retaliatory legislation by other governments, would operate unjustly and oppressively upon every individual living in one state, and owning property in another, by subjecting him to double taxation. If a law be enacted in Georgia precisely similar to our own, it is certain that the prosecutor would be liable to taxation for this property as a citizen of that state. And if it be held liable to taxation in this state also, it must necessarily bear the burthen of double taxation. And on the other hand, under such a system of legislation, property owned in Georgia by a citizen of this state would be liable to the same double burthen of taxation.

It cannot be presumed in the absence of clear and explicit enactment, that the legislature designed to weaken the bonds of the Union by discouraging commercial intercourse and business relations between the citizens of our own and of our sister states. The fair and reasonable presumption is, that they designed to adopt a general principle, just and beneficial in its operation, *viz.* to make all property in action taxable at the domicil of its owner, and to apply the same principle to the citizens of our own and of all other states. True it may be objected that this construction leaves the property of inhabitants of other states to the protection of our laws without being amenable to taxation. The obvious answer is, that the property of our own citizens in like circumstances enjoys the same protection in other states, without being liable to taxation there. In both cases the taxes are paid at the domicil of the owner, and the principle, being universally adopted and applied, is just and uniform in its operation.

There may be instances of deviation from this principle in the legislation of some of the states of the Union, but they constitute the *exception*, not the *rule*. The principle is thus clearly stated in the most approved modern treatise in relation to the subject. " The general rule appears clearly to be, that in regard to public taxes, every person is liable to be assessed

for his *personal* property in the state of which he is an inhabitant; and stock owned in incorporated banks, &c., by non-resident holders thereof, is not subject to the taxing power of the state. Indeed the stock is not a thing in itself capable of being taxed on account of its locality; and any tax imposed upon it must be in the nature of a tax upon income, and of necessity confined to the person of the owner, who, if he be a non-resident, is beyond the jurisdiction of the state, and not subject to its laws." *Ang. & Ames on Corp.* (4*th ed.*) § 458.

The assessment is unlawful, and must be set aside.

ELMER, J. It is objected in this case, that the prosecutor is not liable to be taxed for his personal estate by virtue of the act of March 14, 1851, entitled " A supplement to the act entitled, an act concerning taxes, approved April 14, 1846," upon the ground that he did not at the time of the assessment reside in the borough of Princeton, but was only a temporary sojourner there, his permanent residence being in the state of Georgia.

The second section of the act declares " that all lands and all personal estate within this state " shall be taxed. It is undoubtedly the general rule of law, that personal property follows the domicil of the owner. This was so stated by the court in the case of *Varnum* v. *Camp*, 1 *Green* 326, and *State* v. *Falkinburge*, 3 *Green* 320, although it was held in both those cases that this rule is subject to exceptions and limitations. In Falkinburge's case, it was decided that, under the former tax laws of this state, cattle were properly taxed in the township and county where they were pastured, although that was not the place of the owner's residence; and, in accordance with that decision, it is the fair interpretation of the act of 1851, that chattels of a non-resident, actually kept and used in this state, may be taxed, while such as are permanently kept and used out of the state, in a house or store or on a farm, are not to be considered as personal property " within this state," although owned by one of its resident citizens. The seventh section of the act directs that every person shall be assessed in the township or ward where he resides when the

The State v. Ross.

assessment is made, for all personal estate owned by him ;" but, taken in connection with the second section, it may be understood to mean personal estate within the state. Bonds and other choses in action have no locality, and follow the residence of the owner.

In the case of *Cadwalader* v. *Howell and Moore,* 3 *Harr.* 138, it was held by the Supreme Court that the residence required to entitle a person to vote at an election, means his fixed domicil or permanent home, and is not changed or altered by his occasional absence, with or without his family, if he has the intention to return. The principle of that case is applicable to the case under consideration. Without meaning to dispute the power of the legislature to tax even a casual visitor in common with its permanent citizens, if it thinks proper unequivocally so to determine, the obvious impolicy of doing so in the cases of citizens of other states of the Union, and the general, if not universal usage not to do so, are sufficient reasons for holding that such an intention cannot be inferred from the general language of the act in question. The assessor in this case, it would seem, did not attempt to assess the prosecutor for the whole of his bonds or stock, but only for bonds of the Camden and Amboy Railroad Company, supposed to be held by him. If he was liable to be assessed for any bonds, he was liable to be assessed for all he owned. The bonds of a company incorporated under the laws of this state are no more " personal estate within this state" than the bonds of any other company or of any individual citizen or foreigner. If owned by a person whose residence is in this state, within the meaning of the act, then they are personal property within the state, otherwise not. I do not think that it is the meaning of the act, that the citizen of another state, who comes into this state with his family, and lives for a few weeks or months in a lodging house or in his own dwelling, with the intention of returning, should be considered as residing in the township or ward in which his lodging or dwelling happens to be situate, so that he is liable to be taxed for bonds or other personal property having no proper locality within this state.

Nor was the prosecutor liable to a poll tax. The term in-

habitant, in the first section of the act, means one whose domicil is in the state, and not a mere transient passenger or temporary sojourner.

The real estate owned by the prosecutor, and situate within the township, was rightly taxed at its real value without re- gard to encumbrances. By the provisions of the eighth section of the tax law, the real and personal estate situate in the town- ship or ward wherein the owner has his proper residence, is to be valued together, and from this value the whole amount of his debts is to be deducted, the assessment being on the balance. But real estate, situate elsewhere than in such township, is to be assessed at its actual value, without regard to encumbrances or to the indebtedness of the owner. I am of opinion that the poll tax, and so much of the tax as is assessed on the Camden and Amboy bonds of the prosecutor, must be set aside.

POTTS, J.    A tax of $484,75 was assessed against the pro- secutor, in the township of Princeton, in 1851. It appears, by the return made to the *certiorari* and the affidavits taken, that this tax was assessed on Mr. Potter's real and visible personal estate in Princeton, valued at $15,000, and on railroad and canal bonds held by him, estimated at $200,000, and a poll tax of fifty cents, &c., The *poll tax* and *the tax on the bonds*, are objected to as illegal, on the ground that Mr Potter was not a resident or inhabitant of this state at the time. The affi- davits show that he is the owner of a large rice plantation in Georgia, on which he resides the chief part of his time, and the cultivation of which he superintends; that he votes and performs jury duty in Georgia, and does not vote or claim the privileges of a citizen in this state, but spends the summer months in this state, it not being safe to reside on his planta- tion during that season; that he owns a furnished house in Princeton, where he generally resides from about the 15th June to the 15th November, when he returns to Georgia, which he considers his permanent home.

The act concerning taxes, *Rev. Stat.* 1003, and the supple- ment thereto, *Pamph. L.* 1851, *p.* 271, use the word "*inhab-*

*itant*" as the designation of the class of persons liable to taxation in this state. The word is to be construed, in this connection, according to its legal import. As defined by lexicographers, it means one who resides or dwells permanently in a place, or who has a fixed residence, as distinguished from an occasional lodger or visitor. And where the question is one upon which certain municipal privileges and obligations depend, such as taxation, settlement, and voting, this definition is generally adopted. It is very clear that, for these purposes, a person cannot be considered an inhabitant of more than one state at one and the same time. And if in this case Mr. Potter was a legal voter, was liable to a personal tax, and had a legal settlement in Georgia, it seems quite certain that, for these purposes, he was not an inhabitant at the same time of Princeton, in New Jersey.

In the case of *Cadwalader* v. *Howell and Moore*, 3 *Harr.* 138, the facts were very similar to those in this case. Cadwalader's permanent residence was on his farm in the township of Ewing, in this state, but he kept a furnished house in Philadelphia, where he resided in the winter. The court held that his legal residence and his right to vote was in Ewing.

The legal doctrine in relation to inhabitancy and residence is generally treated of in the books under the head of domicil, and for most practical purposes the words are synonymous.

It was held in *Guier* v. *O'Daniel*, 1 *Binney* 349, that " the apparent or avowed intention of *constant* residence, not the manner of it, constitutes the domicil," and that " it may be defined to be a residence at a particular place, accompanied with positive or presumptive proof of the intention of continuing it an unlimited time." And see 2 *Bos. & Pul.* 230 ; 5 *Ves.* 750 ; 3 *Merrivale's Rep.* 67.

In *Harvard College* v. *Gore*, 5 *Pick.* 369, the case was this : Gore having a mansion house at Waltham, and residing there, in 1822 purchased a house in Boston, and furnished it, and thenceforth resided in Waltham in the summer, and in Boston in the winter, until his decease in 1827, and it was held that he was legally an inhabitant or resident of Waltham, and not of Boston.

And so in *Sears* v. *City of Boston*, 1 *Metcalf* 250, the plaintiff had leased his house and furniture in Boston, and gone to Paris, where he lived and kept house, intending to reside there three years, it was held that, as the intention to return showed that Paris was a place of temporary, and not of permanent abode, the original domicil in Boston continued for the purpose of rendering the party liable to taxation.

It appears in evidence in this case that Mr. Potter's permanent residence is in Georgia ; that his business is there ; that he assumes, when there, the obligations, discharges the duties, and enjoys the privileges of a citizen ; that Princeton is but a temporary abode, resorted to in summer for its healthfulness, and always with the purpose of returning. There can be no doubt, therefore, that he is in contemplation of law an inhabitant of the state of Georgia ; that his residence, his legal domicil, is there. It follows, as a consequence, that he is not liable to pay a poll tax in this state.

Is he liable, then, to pay a tax upon these bonds in this state ? The general rule in reference to personal property is, that it follows the person, and wherever the domicil of the proprietor is, there the property is to be considered as situate. *Story's Conf. of Laws*, § 379, and *cases there cited*. And this principle is adopted in the supplement to the act concerning taxes, sections 6 and 7, which enact, that " the personal tax shall be assessed upon each inhabitant liable to a personal tax in the township or ward where he resides at the time of the assessment," and " every person shall be assessed in the township or ward where he resides when the assessment is made, for all personal estate owned by him," &c. As, therefore, Mr. Potter was not at the time the assessment was made, in contemplation of law, an inhabitant of Princeton, and had no legal residence there, he was not, either upon general principles or by the language of the statute, liable to be assessed there for any bonds, notes, stocks, or other choses in action, which he held, and the assessment upon the bonds of which he complains was clearly illegal.

There is an exception to this rule in the case of personal chattels, such as household furniture, stock on a farm, farming

utensils, &c., permanently used or kept by non-residents in this state. But this question does not come up here.

Let the assessment be corrected in the above particulars.

CITED *in State* v. *Branin*, 3 *Zab.* 507 ; *Harker* v. *Brink*, 4 *Zab.* 346 ; *State* v. *Powers*, 4 *Zab.* 407 ; *State* v. *Thomas*, 2 *Dutch.* 182 ; *State* v. *Cook*, 3 *Vr.* 353 ; *State* v. *McChesney*, 6 *Vr.* 551 ; *State* v. *Casper*, 7 *Vr.* 368 ; *Leonard* v. *Stout*, 7 *Vr.* 377 ; *Stonnington Sav. Bk.* v. *Davis*, 1 *McCar.* 290.